## CARPENTER v. MEAD.

No. 5154—Opinion Filed November 23, 1915.

Rehearing Denied December 21, 1915

Second Petition for Rehearing Denied July 25, 1916.

(153 Pac. 658.)

### 1. Replevin—Right of Action—Possession.

A replevin action ordinarily cannot be maintained against one not in possession of the property at the time of the institution of the suit.

### 2. Sales—Transfer of Title—Rights of Third Person.

Negotiations were entered into between A. and B. to trade horses. Terms were agreed upon, provided B., after ten days' trial, liked the horse he was getting in the trade, but the horses were exchanged at that time. Within ten days B., not being satisfied with A.'s horse, demanded his horse from A., but, instead of returning the horse, A. sold the same to a third party. Held, even though the purchaser be an innocent purchaser and had no notice that B. claimed the horse, that he could not hold the horse against B.

### 3. Sales—Title Transferred.

Generally no one can transfer a better title to a chattel than he himself possesses.

(Syllabus by Mathews, C.)

Error from County Court, Kay County; Claude Duval, Judge.

Replevin by S. J. Carpenter against Paul M. Mead. Judgment for defendant on appeal. From a judgment rendered in the county court, plaintiff brings error. Affirmed.

Sam K. Sullivan and H. S. Braucht, for plaintiff in error.

J. F. King, for defendant in error.

Opinion by MATHEWS, C. This was an action in replevin instituted in the justice court for the possession of a certain horse of which plaintiff alleged he was the owner and entitled to the possession thereof. Judgment was for the plaintiff in the justice court, but upon appeal to the county court judgment was for the defendant and plaintiff now appeals to this court.

It appears from the evidence that this controversy had its beginning over a transaction between Joseph Wanko and George Tarpenning involving a horse trade; the said Wanko contending that he was approached by the said Tarpenning relative to such a trade, and that they came to an agreement, conditioned upon his liking the horse he got from Tarpenning after a ten days' trial, and that they exchanged horses upon condition that the trade was not to be effective unless he decided to accept the deal offered him after that time, while the said Tarpenning contends that there were no conditions attached to the trade, but that it was completed at the time of the exchange of the horses. Within a few days the said Wanko demanded his horse from Tarpenning, and, upon being refused, instituted a replevin action against Tarpenning for the horse. The officer was unable to find the horse until about two months afterwards, when the horse was found in the possession of S. J. Carpenter, the plaintiff in this action, and taken from him by the sheriff under a writ issued in the above mentioned case of Wanko v. Tarpenning. Carpenter then instituted this action in replevin to recover the said horse from the said sheriff; the replevin affidavit being in the usual statutory form.

The assignments of error presented here are: (1) The admission of evidence relative to the case of Wanko v. Tarpenning and evidence relative to the horse trade between Wanko and Tarpenning; and (2) the over-

ruling of the motion of plaintiff for a directed verdict.

We are of the opinion that the files in the case of Wanko v. Tarpenning were not competent testimony in this case. If Carpenter had been a party to the first suit, then the files in that case would perhaps have been proper evidence in this case, but at the same time we fail to see how the admission of the files in the case of Wanko v. Tarpenning could have in any way affected the results in the instant case. It touched upon no issue in the instant case, no instructions were given upon this testimony, and the jury was not directed to consider it for any purpose, and we do not see how they could have been affected by it. The only issue submitted to the jury was whether or not there had been a completed horse trade between Wanko and Tarpenning, and evidence upon that subject was admissible and proper.

The plaintiff insists that he brought the action against the defendant, not as sheriff of Kay county, but individually, and that he has not pleaded that he took the horse from plaintiff as sheriff. We also deem this immaterial, because the only defense relied upon was that Wanko was the owner of the horse in controversy.

This action was begun in the justice court, and no formal pleadings upon the part of the defendant were necessary. The burden of proof was upon the plaintiff to prove that he was the owner of and entitled to the possession of the horse. Without filing any formal answer or traversing his pleadings, the defendant could defeat his action by showing that the property belonged to Wanko (Cobby on Replevin, sec. 785), and that was the only defense urged in this case.

Neither did the court err in refusing to instruct a verdict for plaintiff because there was substantial evidence in the case to show that Wanko never had parted with title to the horse. The plaintiff takes up much space in his brief in discussing the proposition that a replevin action cannot be maintained against a party who was not in possession of the property at the time the writ was issued, and our own courts have so held frequently. James C. Robb, Henry Klein, and Frederick Haffner v. Michael Dobrinski, 14 Okla. 563, 78 Pac. 101, 1 Ann. Cas. 981. If the case of Wanko v. Tarpenning were under consideration, plaintiff could gather much consolation therefrom, but we fail to see how it can avail him here in the instant case, because no such question is involved.

The fact that the sheriff took the horse in controversy from plaintiff under a writ issued in the case of Wanko v. Tarpenning, an action to which plaintiff was a stranger, is immaterial in this case. If that fact had been urged in the original case of Wanko v. Tarpenning, the defense would have been complete from that proof alone because the defendant, Tarpenning, was not in possession of the horse at the institution of that action, and property ordinarily cannot legally be taken from one party upon a writ issued against another unless he is holding the property for the defendant in the writ.

In the action of Wanko v. Tarpenning this plaintiff was intrenched behind an almost impregnable fortress, and, if he had elected to have remained there and defend himself from that intrenched position, victory would have, no doubt, perched upon his banner, as he would have been called upon to meet the assaults only of the plaintiff, but, when he saw fit to abandon his fortifications and launch an offensive movement of his own by instituting a new proceeding in replevin, he is no longer where, to succeed, he had only to show that Tarpenning was not in possession of the horse at the time the action was instituted, but, to win now, he must be ready and able to defend his title against the world. Cobby on Replevin, sec. 784. Not only must he be able to show that he is entitled to the property against the sheriff, the defendant here, but against Wanko and all others. Thus we are led to reflect that the advice to the forlorn lover, "Be bold, be bold, but not too bold," is also good advice to one engaged in a lawsuit.

Neither do we find that Tarpenning's possession or title to the horse was such that he could convey a good title to an innocent third party. Wanko testified that there was to be no trade unless he was satisfied with the horse he was to get in the trade after a ten days' trial, and the jury found his version of the transaction to be the correct one. In fact, the bargaining was in its very incipiency, and was binding on neither, and no title of any kind had passed. From Lockwood Bros. v. Frisco Lumber Co., 22 Okla. 31, 97 Pac. 562, we take the following:

"In the language of 1 Mechem on Sales, sec. 154. 'It is a fundamental doctrine of the common law, from which all discussion of the question must proceed that, in general, no one can transfer a better title to a chattel than he himself possesses.'

"Again (section 155): 'The universal and fundamental principle of our law of personal property is that no man can be divested of his property without his own consent, and, consequently, that even the honest purchaser under a defective title cannot hold against the true proprietor.'"

The case of Oklahoma Moline Plow Co. v. Smith, 41 Okla. 498, 139 Pac. 285, presents

facts that are much stronger towards a conditional sale than the facts in the instant case, but in that case the court held that it was only an "executory contract to sell," using therein the following language:

"A 'sale,' in its broadest sense, may be defined as the transfer of the property in a thing for a price in money, while a 'contract to sell goods' is a contract whereby the seller agrees to transfer the property in goods to the buyer for a price, which the buyer pays or agrees to pay, and is sometimes termed an 'executory contract of sale' or 'an agreement to sell.' It is said by an eminent author (Benjamin on Sales, secs. 3, 308) that the distinction between an actual sale and a mere executory agreement is that in a bargain and sale the thing which is the subject of the contract becomes the property of the buyer the moment the contract .is concluded, and without regard to the fact whether the goods be delivered to the buyer or remain in the possession of the vendor; whereas, in an executory agreement the goods remain the property of the vendor until the contract is executed."

The most that can be contended in the instant case was that the proposed contract was only an executory agreement to make the trade, and in no sense can be said to have transferred the title, or to have made it possible for Tarpenning to have conveyed a good title to an innocent third party.

The judgment should be affirmed.

By the Court: It is so ordered.